Please call the next case, last case of the morning. Thank you. Number 14-0950, Pitney Bowes, Inc. v. Sousa, Inc. Counsel, you may proceed. May it please the Court, Counsel Peter Lorenz on behalf of Pitney Bowes. I'd like to begin my argument by clarifying the procedural course here, which addresses the standard of review that Pitney Bowes argues needs to be applied to this particular case. There was a no-accident finding by the arbitrator, a no-accident finding by the Commission, and a split decision and a reversal of that by the Circuit Court on manifest weight grounds. It was remanded back to the Commission, and an award was entered by the Commission for an amount that's in the second award. The appeal then followed on employer's appeal, and there was a confirmation of the award on the decision on remand. I want to talk about the Gilson-Murray case quickly for two reasons. One, because it points out the legal requirement. I think that this Court has made clear that when a case follows a procedural history like that, this Court first looks to the propriety of the original Commission decision. It looks to the propriety of the original Commission decision, specifically if there was a reversal on manifest weight grounds, asking the questions any time those kinds of situations arise as to whether or not any reasonable trier of fact would have found differently. It's specifically that particular legal rule that we argue was violated by the Circuit Court as the Court recognized in Gilster. We think that the Circuit Court, likewise as in Gilster, simply substituted its judgment for that of the Commission. The real question is whether a reasonable trier of fact could have found any facts similar to support the original decision of the Commission, and we think that there are many of those facts. Now, in the Gilster-Murray case, it was a repetitive trauma case. It wasn't a repetitive trauma back case. It was a repetitive trauma knee case. But in that instance, we likewise had procedurally the same situation in which there was a finding of no accident, no accident, and a reversal by the Circuit Court. Kennedy. Well, what theory have you proceeded under, that she suffered from a single accident at work or that it was a repetitive trauma case? What was your theory? Our theory is that she failed to prove accidents. Our theory is that there was clearly no distinct injury alleged and proven that essentially has been conceded by the employee or, excuse me, the employee to claim it. But our argument here on appeal is that it was not against the manifest weight of the evidence for the arbitrator and the Commissioner to find that she simply had failed to prove an accident within the meaning of the word compact, that a repetitive trauma injury simply wasn't proven, that there were a series of facts that supported that, that there were countervailing facts that might have found the fact finder come to a different conclusion, but it wasn't irrational for the finder of fact to have found how it did. Did the claimant ever offer a causation opinion from any medical providers? It's Section 12 examiner, Dr. Zindrick. Yes. Retained by the petitioner well after the alleged accident. I think it was approximately nine months to 12 months. But none of her numerous screening positions offered a causation opinion. Is that correct? That's correct. That's correct. And this is perhaps one of the most persuasive arguments that is in support of the finding of the commission that a reasonable trier of fact in this situation would have concluded that both the vagueness with which the testimony was given by the claimant herself as to the definite time, place, and circumstance of the accident, combined with medical causation, those two clearly commissioned provinces to decide, was properly decided the first time, notwithstanding a dissent, a dissent that was relatively lengthy. I would point out on the dissent that if we're going to character count, if you will, like kids do with Twitter, there's a pretty fact-rich finding by the commission as well, the commission assuming to have adopted that fact-rich finding by the arbitrator himself. As recently, not as recently, even at the time of testimony of the claimant herself at hearing on cross-examination, she's not clear when this accident happened. That's really one of the most important factors that this Court looks to in repetitive trauma cases in which the fact-finding and evidence-weighing province of the commission plays itself out. I would further point out that the circuit court applying the manifest weight standard actually recognizes this and, in fact, says in the opinion of the circuit court, and here I'm referring to the original decision, that the medical evidence demonstrates that the plaintiff's injury was most likely the result of her work injury. Well, although not to be too. Sotomayor, you go back and forth and you're eloquently reciting all the factors, but in this case, it really boiled down to the commission assessing the conflicting medical opinions? It's really both. Blandhoff and Blansky on one side.  And the other side is the fact-finding and evidence-weighing province, and the commission originally found in favor of the respondent, correct? It did. There's no question about that. It's also absolutely the case that the arbitrator adopted by the commission two to one pointed out that he was not persuaded by the opinion of Dr. Zinderich. The reason that I feel one must go further to the fact-finding, fact-weighing that the commission did properly, rationally in this case, is that the arbitrator and the commission didn't even feel it necessary apparently to get to the opinions of two section 12 examiners for respondent and find one favored over the other. The arbitrator and the commission simply said that he was they were unpersuaded by the opinion of the section 12 examiner for Petitioner. So your argument succinctly in support of the commission's original decision would be what? Is that they properly weighed, as is their province, disputed issues of fact, found in favor of the employer, and that the circuit court simply re-weighed those facts. Simply re-weighed those facts. The citation to Oscar Meyer I just briefly would like to talk about and distinguish. Oscar Meyer was an individual, excuse me, the claimant in Oscar Meyer was an individual who had worked for many, many decades for Oscar Meyer, carving up 800 hog carcasses an hour. I think the facts bear out. The EMG test, which it's pretty much accepted the medical profession thinks is the most definitive diagnosis of carpal tunnel syndrome in 1981, indicated that there was probably carpal tunnel syndrome. The gentleman continued to tough it out and work. There then again was another one in 1982, same thing getting worse. 1983, yet another EMG followed very soon thereafter by can't tough it out much longer, need to have the surgery, and an alleged date of accident at the end of it. That's really what the Oscar Meyer case was about. There was really the recitation by this Court that there would not be announced a totally inflexible rule as to when a Petitioner is permitted to allege a repetitive trauma accident. That's quite a bit different than no rule at all. There's always been the rule that there's the requirement to prove definite time, place, and circumstance, although within inflexible circumstances given the nature of repetitive trauma. Without any other questions, I'll reserve time for rebuttal. You'll have five minutes in rebuttal. Thank you. Thank you. Counsel, you may respond. Good morning, Your Honors. Marilyn Kosin on behalf of the Petitioner. I've heard counsel's argument, and briefly, the procedure history in this case, obviously we think the decision on remand is correct. For some strange coincidence, it's the same commission who initially ruled against the Petitioner. I believe that we think that Gilster Mary Lee offers this Court the opportunity to not initially jump on to the original decision issued by the commission. Primarily, I say that because when a commission decision involves a legal issue, and I would suggest that repetitive trauma, there's case law underlying that. It's well developed. It goes up to the Supreme Court. When the commission doesn't utilize that body of law and incorrectly, as it did in the first decision, is looking for a single traumatic event and not looking at it as a repetitive trauma case, when it gets to the circuit court, that court can, as it did, do a de novo review. And then when it goes back down to the commission on remand, what it did, that same three commissioners utilized a correct body of law, utilized repetitive trauma law. Kennedy did the circuit court do a de novo review, or did they say that the decision was against the manifest weight of the evidence? The circuit court did say that she's using a manifest weight of the evidence standard. She says that. So you're more or less reinterpreting the circuit court's decision? I'm not reinterpreting. When we presented our briefs, we presented it as presenting the court with the opportunity to do a de novo review. I think with the court, when the court takes the body of law and applies it to the facts, and I believe that's what Justice Brennan did in this case, she calls in a manifest weight of the evidence. I think it's more of a combination and more of a de novo review. Putting that aside, I think the Bagot case that we cite supports this Court's ability to, of course, not ignore an original decision. I would never suggest that. But I don't think, as counsel suggests, that that is the first stop necessarily in this case. The commission decision on remand is a very, very thorough review of this case. But the commission was boxed by Judge Brennan's decision. They had to find that she proved a causal connection and then proceed to award benefits. They had no choice on remand. So when you say it's thoughtful and it's thorough, yeah, thoughtful and it's thorough with one arm tied behind its back. The question here, the Supreme Court has told us time and time again that when a case is fixed, reversed, and sent back to the commission and redone, and you have an opinion on review, on remand, and an appeal is taken from that, that the first thing you do is make a determination is the propriety of the original order. So the real question here was, to my mind is, was the original order against the manifest weight of the evidence or wasn't it? We don't get to the second order at all. That is fine. Let me not address then the original decision. You have to. And I will. The original decision utilizes, this is just one of many traumatic events that happened to the Petitioner. And they do not look at, I'm suggesting, repetitive trauma law, what is a manifestation date. And if I can separate that from causation, because I believe they erred on two grounds. First, the date that we put down, the March 9, 2007, the date of the accident, that is going to be the last date that this Petitioner is going to work for her employer in a job which is unrebutted, a very heavy lifting job. Respondent has never challenged that, has never challenged what her job duties are in any way, shape, or form. And she leaves work on that date as a reasonable person, not a physician, and is not going to return to her job for Pitney Bowes at any time. So I think they did not look at her job duties. They did not look what she was doing. They did not look that then she's going to start seeing doctors and never come back. With respect, then, immediately with causation, this Petitioner has the unfortunate situation where she's going to go to many, many different doctors. We're not going to disagree that the doctors are all over the place, corn on her foot, many different things. She's not getting any kind of causational diagnoses. Kennedy. None of her treating physicians ever offered a causal connection. We don't have, Your Honor, I'm going to agree with that. We don't have a specific one until Dr. Zindrig. However, before she even gets. Was he the treating or was he the I.M.E.? He's going to be a Section 12 doctor. But I think this Court has said that a Section 12 doctor is not put on a special pedestal favoring one, a Petitioner or a Respondent. They are supposed to be an independent doctor. It's the same way Dr. Blonsky and Dr. Lanoff are supposed to be Respondent doctors. Now, that being said, before she even gets to Dr. Zindrig, this person is putting a real rock in a hard place. She is sent for an F.C.E., which finds she can't work. But more importantly, she starts a duty disability route with a very well-respected doctor. It's pointed out, at least in the initial dissent of the original commission, Dr. Jesse Butler. And Dr. Butler, he finds causation as a work-related accident. Unfortunately, as we – as the record bears out, duty disability then says, well, if it's work, it's not duty disability, we're cutting you off there. And COMP, on the other hand, says we're not picking it up. You have nothing. That complicates this woman's medical. She loses. They change plans. She loses her primary care physician, Dr. Barrett. Goes to see a whole slew of folks. But when she hits Dr. Zindrig, he is – comports with Dr. Butler on causation. He agrees. Do a discogram, okay? This woman has definitely preexisting back. We've never disputed that. But he links it up that the lifting is a cause. The commission in the original decision doesn't go into anything like that. They don't even really weigh doctors, okay, in this case. I don't – I don't read their decision as weighing Dr. Lanoff or Dr. Blonsky as over Dr. Zindrig and Dr. Butler. I think you're doing a very admirable job of relating the facts and the evidence from the claimant's perspective. But, I mean, still, at the end of the day, I'm sure you're well aware of the authority that says we are to affirm the commission if there is sufficient, quote-unquote, evidence in the record to support the commission's decision. They're assessing the credibility, they're assessing the doctors. So how do you overcome those basic rules that the commission has weighed the evidence, they've weighed the credibility of the conflicting medical opinions, and have decided that their finding is in favor of the respondent, that there is no work-related exit? How do you overcome that here? I overcome it, Your Honor, because I don't think they were utilizing the well-established body of law in repetitive trauma. I don't think so. I think that they – What are we to do with this passage? What are we to do with this passage in the arbitrator's decision that was adopted by the commission in the first instance? Petitioner relies on the causation opinion of Dr. Zindrig. Dr. Zindrig relied on petitioner's statements as to her job duties. However, he has no clear idea of the frequency of the tasks she reported to him or the frequency of the various stresses that she would encounter. It goes on to say, based on the foregoing, the arbitrator concludes that Dr. Zindrig did not have sufficient knowledge of the petitioner's job duties, repetitive activity, or stresses regularly experienced to give a meaningful and sufficient opinion to establish repetitive trauma. In addition, Dr. Ladoff refers to the present state of generally accepted medical studies which show that lifting work bears no correlation with frequency of back injury. Dr. Ladoff also opined that petitioner does not really have any physical malady that a heavy or light job would have given her. Now, that's pretty much a comparison of doctors' opinions, don't you think? Well, I would say yes, but I think that the commission, and on page 18 of our brief, we went through again what Dr. Zindrig said he heard from the petitioner. And her job description, she was required to frequently lift boxes that could weigh in excess of 50 pounds. He goes on, and I think the commission just, for whatever reason, did not go in and read Dr. Zindrig's understanding of the petitioner because, and it would be found in the record 881, 900, and 925 where he has a very good understanding, and also where they aired with Dr. Ladoff. If you're going to compare, I would never suggest it's not the commission's preference, but there has to be, Dr. Ladoff has to rely on something that is real. I know Your Honor says you can't look at pig entrails or whatever and say that's my opinion. Entrails of chicken. I have to pay closer attention. He didn't go that far in this case either, did he? No. But what I can say is that Dr. Ladoff, on cross-examination, then goes on. First he says there's no repetitive trauma. I don't believe it, almost. And then later on, he says, no, I suppose there can be lifting with repetitive trauma. And the commission didn't, there's no reason to rely on a Dr. Ladoff opinion when he didn't understand repetitive trauma. Or if he did understand repetitive trauma, he's very reluctant to acknowledge repetitive trauma. And this Court and the commission knows there is repetitive trauma. So they misread Dr. Zindrick, and I think there's no reason to go with Dr. Ladoff, who actually changes his mind later on throughout the deposition. Yes. Thank you. Thank you. Counsel, you may reply. Thank you, Justices. Just briefly, most definitely the Supreme Court and the appellate court has said, not just since Gilster-Mary, that's the most recent case, my research goes back actually into the 30s, that the constraint is that the propriety of the original commission decision must be looked at by this Court. The next argument I would make in reply only is that, in fact, the commission in its original decision acknowledged that this was a repetitive trauma case. They said that a distinct, discrete injury was not alleged, and therefore began to apply the repetitive trauma analysis. I think that, excuse me, my argument is that there is no deference at the commission there ought not be here by this Court to Section 12 examiners, one over the other, as opposed to the clearly recognized standard that there often is that deference at the commission to treating physicians over examining physicians. The only causal connection opinion here in support of the repetitive trauma theory is Dr. Zinderich, and he was retained under Section 12. No other questions unless there are, or no other argument unless there are some questions. I believe there are. Thank you, Counsel, both for your arguments in this matter. I take no advisement that this position shall issue, and the Court will stand in recess until 1.30.